13-52-37 Georgie Brewer et al. v. New Era Incorporated. Oral argument not to exceed 15 minutes per side. Ms. Wall for the plaintiff's appellate. Good morning your honors. I would like to reserve 5 minutes for rebuttal time. This is a very simple case. It arises out of a very small corporation in Middle Tennessee where the employees numbered certainly less than 50, usually between 30 and 40 employees. With the economic downturn that occurred in 2008, it was decided that some of the employees needed to be let go. I represent Ms. Brewer and Ms. Green who were the two oldest employees and also the only two black women who worked in the packing department. The packing department consisted of four women, my clients, and two Korean ladies who were both significantly younger than my clients. Prior to the time, November 14, 2008, there had been a seniority system where those who were laid off were laid off based upon seniority. Ms. Brewer and Ms. Green had the most seniority of any employees there. The only person that came close to them was the plant manager, Mr. John Martelli. In November 2008, both ladies learned that they were going to be laid off as was one other Korean lady in the packing department, Ms. Taylor. Ms. Taylor had only worked at New Era for about one year. There was another Korean lady, Ms. Spate, who had been there for 14 years and she was going to be allowed to continue work. After they were laid off, my clients learned that they would not be returning to work at New Era. They filed this action alleging race and age discrimination. The district court dismissed the case on summary judgment and we are here to ask the court to reverse that decision. This is a case where we feel like we have established a prima facie case of discrimination. The trial court said we had not because they took the position that the ladies were not replaced by anybody outside of the protected class. The trial court relied upon a case named Williams saying that these ladies were not replaced, it was only that Ms. Spates continued to work and they discounted the fact that Ms. Taylor, although initially laid off, was called back to work as soon as the holidays were over. It is our position that pursuant to New Era's policy and procedure, it should have been one of my ladies who had been called back to work since they were the ones with the greater seniority. It is also our position that in determining who should have been laid off, it should not have been Ms. Brewer and Green because they had the most seniority. There's no union agreement there governing layoffs by seniority, anything like that, is there? No, sir. So is the company practiced to lay off and recall based on seniority or not? Is it the nature of the job or what are the factors in terms of company policy? What we were able to show at court was that when New Era bought out the predecessor, they had all employees come in and sign a statement saying that they were aware and had been educated on the seniority system. Ms. Brewer and Ms. Green in 1994 had filed a complaint with the EEOC alleging that they were getting paid the same as what recently hired employees were getting paid. The company, through its plant manager, took the position that the seniority system only applied to layoffs. And that is what they put in their response to the EEOC. Ms. Brewer and Ms. Green both testified that prior layoffs had been, according to seniority, one of our witnesses, Mr. James Northington, had testified that she went by the clock number. That they called out clock numbers and the low clock numbers were the ones that were laid off, whereas the older clock numbers were not. The plant manager, Mr. Martelli, took the position that there had never been a seniority system at New Era. And the trial court believed Mr. Martelli over my client's finding that no reasonable fact finder could find a seniority system. Because of that – Your position then is that there is a seniority system that pertains to layoffs. Yes, sir. Let me ask you this. With respect to the race discrimination claim, are you only alleging indirect evidence of discrimination and you're not attempting to prove your claim or alleging direct evidence with respect to the race discrimination claim? That is correct, Your Honor. Okay, so the decision of the district judge that your class needed to be replaced by someone outside the protected class and that they weren't was the district judge's contention. What's your response to that argument? It's twofold, Your Honor. We think, first of all, the fact that the supervisor for both of these women was a biracial man, half Korean, half white, who we submit there's plenty of evidence in the record to show that he favored Koreans. He retained one Korean employee and let go of three, but as soon as the holidays were over, brought back the other Korean employee who had been laid off and left the two older black women, let them be permanently without a job. And that's the entirety of your evidence on that claim? Only on replacement, Your Honor, not on indirect evidence of racial discrimination. For the indirect evidence of racial discrimination, we also have the testimony of Mr. James Northington who testified that this supervisor, Mr. Price, did not like those of the black race. We have... But that's direct discrimination, direct evidence of discrimination there, isn't it? Your Honor, the trial court took the position it was not because it was not directed at Ms. Brewer and Ms. Green. It was only directed at members of the black race. All right, okay. And for that position, it is certainly our position that taking those statements along with the other evidence in the case that we have presented, a prima facie case of race discrimination. The trial court went on to look at pretext. Under pretext, we believe the fact that there was a seniority system that was not used in this particular case, whereas it had been in other cases, certainly showed that the company failed to use their own policies and procedures, circumventing them to get rid of these two black employees. Taking that into consideration, there had been discussions with one of the owners of the company, Mr. Jeff Hinn, who had made the statement that Ms. Brewer and Ms. Green were too old and needed to retire, did not need to be working at New Era anymore. Okay, okay. But now you're getting into your age discrimination claim. And as I understand, that claim you were attempting to prove based upon direct evidence, not the McDonnell-Douglas test, but just direct evidence as to that claim. Yes, sir. We believe that does submit direct evidence of age discrimination. Okay. But, in addition, we also argued to the trial court, and the trial court said that was not direct evidence of age discrimination. If it's not direct evidence, it certainly is indirect evidence that can be used to show, as part of a promophasia case, to show that not letting these two ladies work was indeed age discrimination. They were the two oldest. They were replaced by younger employees who were just over the 50-year mark. They were qualified to do their jobs, and both of these ladies lost their jobs. Now, when the layoff occurred, there were, I think, perhaps two or more employees who were under 40 years of age, and the others were over 40 years of age. I didn't see in the record the ages of the other – your client's ages, of course, are set forth, but I didn't see the ages of the other individuals who were laid off who were over 40. Do you know – does the record show what those ages are? Yes, Your Honor. There were two other employees over the age of 40 who were laid off. They were not in the packing department, but they were certainly in other parts of New Era. One was in his mid-60s. He had been there just a very short period of time. The other employee was in their 50s. There were only two other employees who were let go who were over 40? Yes, sir. Okay. All right. In summary, Your Honor, we believe that we have certainly presented a promophasia case sufficient to take this case to a trial. We certainly thank the defendants' evidence of pretext. We have shown that there's a genuine issue of material fact upon that. Thank you. Thank you. May it please the Court, my name is Waverly Crenshaw here on behalf of New Era. Your Honor, the decision should be affirmed because there are two independent bases to support the district court's dismissal. Number one, there is no replacement in this case. The two employees that were referred to that remained in the department, the packing department, absorbed and assumed the duties of others. And the law is clear in the Sixth Circuit. That does not make for a replacement. Number two, Your Honor, it has to be affirmed because there is no statistical. And this morning, there is admission there is no direct evidence, and there is no circumstantial evidence required in a RIF. Let me slow this down a little bit. Are you now addressing the race discrimination claim or the age discrimination claim? Your Honor, we believe in a RIF that additional statistical, direct, and circumstantial evidence has to be proved for both and are lacking here in each case. There's no statistics that show race or age. There's no admission now of direct evidence of race. Okay, but these comments that you're making, are you using those to pertain to both claims? You're not separating your argument out, so we know what, in terms of your race claim, the race claim and age claim, you're going to talk about them all together? I'm glad to talk about them separately as well, Your Honor. I'm not telling you how to do your argument. I just want to understand how you're proceeding is all. Well, I think on the replacement element, it's clear that that applies for both the race and the age. That if there's no replacement here, then affirmance of the district court's dismissal is required because this is a RIF case and because that's a requirement in the prima facie case. If we turn to just the race case, if the court wants to look at just that, the race case seems to be based upon we have an admission this morning, even though it's in the briefs, there's no direct evidence of race discrimination here. The very racial comments relied upon had nothing to do with the plaintiffs were unconnected to the RIF. Judge Lyington, you've pointed out in decisions there has to be some kind of express connection between the comment and the job action. That's simply lacking here for race discrimination. Their proof of circumstantial evidence, again, as we understand this record in the argument, relies upon those same race comments as circumstantial evidence. Of course, that imposes a different standard. But again, the very race comments, as despicable as they were, were number one, not by a decision maker, and that's a factor in the analysis. The race comments had nothing to do with the plaintiffs, had nothing to do with the RIF, and the race comments were not in temporal proximity, not in time to when the RIF occurs. So the race comments by a non-decision maker, unconnected to the job action, we contend is insufficient evidence, Your Honors, for it to constitute circumstantial evidence of race discrimination. Of course, there could be an issue of whether the decision makers knew such comments were being made and acquiesced or permitted such comments to be made. And that's correct, Your Honor, but even in the briefs of the plaintiffs, Ms. Brewer and Ms. Green, in this case, they admit there was a prior incident when the plant manager, Mr. Martelli, in fact took disciplinary action when it came to his attention that Mr. Price, who had no role in the RIF except for one of input to Mr. Martelli, brought that to his attention. So we believe the age case, I mean the race case, must be dismissed applying the standard required in a RIF. Well, didn't this Mr. Northington claim that Mr. Price made racist comments and that the management, the company management, didn't do anything about it or refused to impose any discipline on Mr. Price? Your Honor, I think there's argument that it went both ways. There's argument that when it came, proof in the record, that when it came to Mr. Martelli's attention, he did take action and there's also, he says he continued to make complaints about it to the owners of the company and they took no action. But, Your Honor, again, those comments were to Mr. Northington. There's no proof in this record that the plaintiffs ever heard Mr. Price make these racial comments. There's no proof in the record. Well, how did they find out about it to put it in their briefs and things in the case if they didn't know about it? Well, there's a companion case, and I think that's cited in the record, Your Honor, Mr. Northington also filed a lawsuit and that discovery was used as part in opposition to our motion for summary judgment. The district court pointed that out and, again, applying the standard that's been noted by this court in several opinions, it still has to be some connection to the job action. And it's undisputed in this record that these comments by Mr. Price were only to Mr. Northington and were never to the plaintiffs. In fact, there's no proof in the record the plaintiffs ever heard Mr. Price make any such comments. So the fact that Mr. Northington Assume for the moment that there is a prima facie case. Is that the end of your case? Absolutely not, Judge Rogers. Then if there is a prima facie case, either on the race claim or the age claim, and we would concede that the age comment, while not direct evidence, because it doesn't prove that these folks were selected because of their age, but even assuming that there's an inference there on the race or the age, it's undisputed in this record that we have articulated a legitimate nondiscriminatory reason that's not been shown to be pretextual. The record shows that the selections for the RIF were done on three factors, whether or not employees were cross-trained, whether or not they could do a good production, and whether or not they worked well with others. Now, there's much in the briefs about cross-training, and there's a little bit in the brief about a good production. But there's absolutely nothing in the briefs, there's nothing in the records, that disputes New Era's assertion admitted to in the record that these folks, that Ms. Brewer and Ms. Green, did not work well with others. How is that shown in the record? That's shown in the record, Your Honor, if . . . I say how, not where. Okay, it's shown in the testimony of Mr. Martelli. It's shown in the testimony of Ms. Speight. It's shown in the testimony of Ms. Taylor. What's the tenor of that testimony? That, in fact, Ms. Brewer and Ms. Green made Ms. Speight and Ms. Taylor cry, and that was cited by the district court. Did she cry? That Ms. Brewer and Ms. Green caused the Karen ladies, referred to as Speight and Taylor, cry in their working relationship in the plant. Is that the only thing? I mean, we'd have to know what the circumstances of that were. Why did she cry? I mean, we'd have to know more than just that somebody cried. I mean, we wouldn't jump from that to the conclusion that the other person didn't work well with somebody. And, in fact, that's a fairly subjective statement in any event. Is that all you have about that? No, Your Honor. Mr. Martelli explains as well that the inability of the plants to work well with others was not limited to just one occasion. Okay, that's the conclusion. What is it that gave rise to that conclusion? This was a small plant. He was the facility plant manager, about 25 employees. So he testified in the record that he had knowledge, experience about the working relationships of all the employees. He knew them all by name. This is not a big facility. Okay, but what did he observe that gave rise to his conclusion that these two didn't work well with others, if anything? In his deposition testimony, he talks about the fact of the crying, the argument, and the fact they didn't get along. Well, crying in and of itself, just to say crying doesn't mean anything unless there's some explanation that goes with that. So far you haven't given any reason or example as to why or how they didn't work well with other people. Your Honor, the particular circumstances, if that's what you're referring to, that led to them crying? Well, I'm not concerned about the crying incident, but you haven't told us anything as to why they couldn't work well with others. Well, we have presented proof as part of our summary judgment motion that Mr. Martelli found they did not work well with others. He has explained in his testimony the reason. All right, all right. I won't believe with that. You can move on to something else. Well, he's explained the reason for it. If that were not true, Your Honor, the burden then shifts to the plaintiffs to come forward and show through admissible evidence on summary judgment that they did work well with others. You can't place a burden on somebody to disprove all manner of things just by making an assertion. If you don't have any basis for the assertion, that wouldn't be a very effective truth-seeking process as a part of some trial proceeding or any judicial proceeding. Well, the basis for the assertion was explained when the plaintiffs took Ms. Taylor and Ms. Bates' deposition, and once they became aware of that assertion, they could have at least presented an affidavit saying, yes, I did work well with others. There's nothing in this record, Your Honor. What about the second one of the three bases? There was two other bases, the cross-training and then performing, whether or not they did a good production. What about the second one of those two? The good production. I think that on this record, Your Honor, on a summary judgment analysis, there is proof that they did do a good production. I think what we're talking about here is in terms of their ability to perform. They were limited to one department. You said there were three reasons why these people were rated low in the RIF, right? Right. And there's evidence, you say, to support each of those three reasons, and the briefs talk about the first one. You've just engaged in a colloquy about the third one. I'm asking about the second one. There's nothing in there, or there is something that supports that as a basis for rating them low in the RIF or not? I think in the RIF, Mr. Martelli found that they could produce a good production in the packing department. So that factor didn't help. It didn't support the company's decision to rate them low in the RIF. I think that factor was… So it's all in the cross-training or the working well with others. Exactly, Your Honor. What were the particulars that Martelli relied on in concluding that they didn't work well with others? Your Honor, the proof we've cited in the RIF is Mr. Martelli's deposition testimony, where he goes through each of the factors, and on that factor about not working well with others, talks about that it was constant interaction, arguments on the packing line with the other employees. He talks about instances over time when Ms. Brewer and Ms. Green caused… At one point, there's testimony that says they almost quit. She says, I almost quit my job because she was talking to me so mean. She was being so disrespectful to her on the line. And the two Korean ladies testify about that. Their deposition testimony is also in the record, and they testify about their own interaction with Ms. Brewer and Ms. Green that supports Mr. Martelli's conclusion that they did not work well with others. Why didn't this stuff show up in these two ladies' evaluations of personnel file? Long-term employees. In this particular plant, Your Honor, I have to emphasize, it was a very small plant that did not use all the traditional kind of HR procedures and policies that may be used in a larger manufacturing site. But you can see that this stuff that you're now seeing was not documented to their files, to their personnel records. Correct? I can see that Mr. Martelli, and my statement is Mr. Martelli, the facility manager, he knew each and every employee. That's not my question. My question was that all this not working well with others and these negative comments and incidents were not documented to their personnel files and records. Correct? I believe that is correct. High-rise testimony that Mr. Martelli did talk to Ms. Brewer and Ms. Green and told them. I didn't ask you that. I did not ask you that. I mean, I think you now answered what the question was. I agree, Your Honor. It was not documented to any particular personnel file. I would suggest that the record shows they were put on notice. So the fact that you had other employees. They were put on notice about what? I don't know. What are you talking about now? I wasn't asking about them being put on notice about anything. What were they put on notice about? Mr. Martelli may not have put it in a written document, Your Honor, but he told Ms. Brewer and Ms. Green of the need for them to get along well with others, and we could suggest that's an equally valid way, HR personnel method, to make sure folks know what's happening. But he didn't document that to their file. He didn't document that anywhere. That's correct. He did not. Okay. Your Honor, we believe that the decision should be affirmed. The replacement element is quite clear. We believe that there is no direct, circumstantial, or statistical evidence here that would support them establishing a primary face of case. But even if they did, on this record, we contend that there's been no proof of pretext in the selection process, and therefore the judgment should be affirmed. Thank you. I think that you all have hit upon one of the problems in this case. The problem with it, and why Mr. Crenshaw couldn't answer some of these questions, is the defendant did not take the position in the summary judgment that these ladies could not get along with the others. It was the trial court who, sui sponte, looked at some of the parts of the deposition, and they made that decision. That's why plaintiffs didn't come back with it. I submit the reason why the defense didn't rely upon that is because in the Middle District, we do not file the summary judgment. We don't file an entire deposition. You take the pages that you're going to rely upon, and that's what you file, only those pages. The pages that were not filed is the rest of the story, where these ladies did not have problems getting along with anybody. They had all three ladies in the packing department had one time been told to get along well with each other. Ms. Spates herself said she never had a problem with Georgie Brewer. There was one issue, one time in 30 years with Ms. Green, both ladies worked it out. The problem is when the court, sui sponte, comes up and says, I've decided in order that this is a valid, legitimate reason because these ladies didn't get along well, if we had been allowed to brief that, then the court would have seen the rest of the story. 34 years' work with no problems in their disciplinary file. No problems in their personnel file. These ladies were good employees. Mr. Northington himself testified what good, hardworking employees they were. Now, Jeff Price, although not labeled as a decision maker, the supervisor, the biracial supervisor, was certainly consulted regarding who should be laid off. Mr. Martelli was honest with that. He said he consulted him. Mr. Price admitted it. Mr. Northington said it. Mr. Henn admitted it. Mr. Price had input in the decision of which ladies in the packing department were going to be laid off. He chose the two black employees, the two older employees. He kept the Korean employees. Thank you. Thank you very much. By the way, have two sides here tried to settle this matter? We do have a mediation office here in the Court of Appeals to assist people in discussing resolution of cases if they want to do that. It's entirely voluntary. But have you all tried to resolve this matter at all? Certainly, sir, I have tried to. We did not get anything done at the trial court level. There was some attempt made through the courts, the Sixth Circuit's mediation program. But when one's in the position that I'm in, usually there's not often times where you can get cases settled when you've been thrown out of the trial court. I see. Okay. That's correct. There's not been any mediation.  All right. Thank you. The case is submitted.